FOGLE, HARRY W., Associate Judge.
Plaintiff/appellant appeals from an order granting defendants’/appellees’ motion for a mistrial and, in the alternative, granting appellees’ motion for a new trial.
Juan Roman worked for a landscaping concern and as part of his job, went almost every day to Kelley’s Gardens, a nursery which raised coconut palms. On Sunday, April 23, 1972, Roman went to the nursery and told one Pyles that he was there to get a tree. Pyles was not feeling well and was busy when Roman arrived, so he agreed to Roman’s suggestion that he get the tree himself. Roman got the special boom vehicle which was designed to move through the narrow rows without harming the palm trees. Roman had seen the Kelley employees use the vehicle on many prior occasions, and he had even run it himself twice before. Roman took the Kelley vehicle into the field, dug the tree up, and lifted it with the cable to the boom truck. When he got into the vehicle to drive it back to the shed, the boom fell on Roman’s back and seriously injured him.
Roman received Workmen’s Compensation benefits from his employer who was insured by Aetna. Aetna brought a personal injury action for the use and benefit of Roman and his wife, Lidia E. Roman, against appellees, on the theory that the boom was negligently maintained and that appellees failed to provide proper instruction and warnings regarding its use. The cause proceeded to trial. While the jury was deliberating and after the completion *954 of the three-day trial, the door to the jury room opened and a juror came out of the jury room, unannounced, and copied a number from the blackboard used by plaintiff’s counsel to dramatize damages in closing argument. The juror then returned to the jury room before the bailiff or anyone could do anything. Within a minute or two the jurors announced that they had reached a verdict which later turned out to be the exact figure written by plaintiff’s counsel on the blackboard in closing argument as to the damages suffered by Mr. Roman.
At that point, defendants moved for a mistrial, and a colloquy between the attorneys and the court resulted. The court made an inquiry of the bailiff who stated, “I heard the door click and I approached the door and the gentleman stuck his head out and went back in and jotted down some figures and that is all I observed at the time.” The court then called the juror and asked him for a yes or no answer to the question, “Did you a few moments ago come out of the jury room for the purpose of securing a number off the blackboard?” The juror answered, “Yes.” The court then called the rest of the jurors into the courtroom and asked for their verdict. The jury verdict was for Juan Roman in the amount of $238,272.80, the exact amount on the blackboard and which plaintiff’s counsel had asked for in closing argument, and $26,000 as to Mrs. Roman. The jury found comparative negligence of 38% on the part of plaintiff and 62% on the part of defendants. The trial court then reserved ruling on defendants’ motion for mistrial.
After discharge of the jury, plaintiff’s attorney and defendants’ attorney examined the jury room and found several small slips of paper. On six of the slips were written the following figures: 15%, 10%, 30%, 75%, 50% and 60%. On another slip these figures were totalled and then divided by 6, yielding an average of 43.3%. On six other slips were written the figures $35,000; $5,000; $10,000; $40,000; $5,000 and $60,-000. These figures were added and the result divided by six on another slip, yielding an average of $25,833. All of these slips were immediately given to the trial judge.
Defendants filed timely post-trial motions for new trial and to have the verdicts set aside and judgment entered in accordance with their motions for directed verdicts. After hearing on the motions, the court concluded the actions of the jury were “tantamount to an agreement for a quotient verdict” and granted the motion for mistrial and, in the alternative granted the motion for new trial.
The only issue on this appeal from the trial court’s order granting a new trial is whether or not the grounds for the order were sufficient; i. e., did the verdict of the jury constitute a quotient verdict.
We hold the trial court improperly granted a new trial to appellees on the basis that the rendition of the verdict for Juan Roman in the exact amount of the figure on plaintiff’s/appellant’s blackboard constituted a quotient verdict.
Although a trial judge has broad discretion in granting a new trial, the reason given by the trial court for granting a new trial here is legally insufficient since the verdict for Juan Roman is definitely not a quotient verdict. In stating the actions of the jury were improper and tantamount to an agreement for a quotient verdict, the order concluded, “it is apparent that an agreement had been reached among the jurors to adopt a figure on the blackboard as their verdict; consequently, the verdict rendered was not one arrived at by independent deliberation.”
Marks v. State Road Dept, 69 So.2d 771 (Fla.1954), defined a quotient verdict:
“. . .To constitute a quotient verdict . . . it is essential that there be a preliminary agreement or understanding among the jurors that each will select a figure as representing his opinion of value or damage and that the sum of said amount divided by the number of jurors will be accepted by each as his or her verdict, and is in fact so accepted.”
The trial judge herein has erroneously expanded the meaning of “quotient verdict” *955 to include a situation where the jury adopts the figure presented by plaintiff’s counsel as the total damages sustained. In Braddock v. Seaboard Air Line RR. Co., 80 So.2d 662 (Fla.1955), where the court approved the use of a blackboard during closing argument to demonstrate the damages sought, the Supreme Court held that a jury may properly award damages equal to or in excess of those requested by counsel in closing argument. There was no evidence here that the jury had entered into any preliminary agreement to be bound by any quotient. See Brinson v. Weinstein, 237 So.2d 211 (Fla. 4th DCA 1970), cert. den. Fla., 243 So.2d 159.
Here the jury was polled by the court and each answered affirmatively that the verdict was his own. Further, the slips of paper pertaining to percentage of comparative negligence show division to reach an average of 43.4%, while the verdict was rendered for 38%; thus the percentage of comparative negligence represents more than a minimal discrepancy and does not indicate some slight addition or subtraction or a “rounding off” of a quotient.
The verdict in the amount of $26,000 for Mrs. Roman, however, is close enough to the $25,833 average on the six slips to raise some question as to whether or not a motion for new trial should be granted as to this verdict. In view of the trial court’s ruling, it does not appear from the record that any opportunity was ever afforded for counsel to explore whether or not the verdict for Mrs. Roman was a quotient verdict. This opportunity should be allowed.
The order granting a mistrial and, in the alternative granting a motion for new trial is reversed. Judgment for the use and benefit of Juan E. Roman shall be reinstated by the trial court. Upon remand, the trial court shall determine whether or not the verdict for the use and benefit of Lidia E. Roman was, in fact, a quotient verdict. If so, a new trial on the issue of damages must be awarded as to her claim. If not, the judgment for her use and benefit shall also be reinstated by the trial court.[1]
GRIMES, A. C. J., and SCHEB, J., concur.

. Appellees’ cross-assignments of error were stricken by this court on the authority of Gulf Coast Title Co. v. Walters, 125 Fla. 427, 170 So. 130 (1936), and Osteen v. Seaboard Coast Line RR. Co., 283 So.2d 379 (Fla. 1st DCA 1973). The most recent Supreme Court case in this area, Bowen v. Willard, 340 So.2d 110 (Fla.1976), has only a prospective effect. We note, however, that the grounds appellees attempted to raise in these cross-assignments would be raisable on an appeal from the reinstated judgment.